The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Amy C. Lannard presiding. Good morning. We are taking up the case of People State of Illinois v. Mitchell v. Rogers, case number 4231286. Counsel for the appellant, if you please state your name for the record. Good morning, Your Honor. Sarah Lucy. And counsel for the appellee, please state your name for the record. James Ryan Williams. And Ms. Lucy, you may proceed with argument. Thank you. Good morning and may it please the court, counsel. As I said, my name is Sarah Lucy from the Office of the State Appellate Defender and I represent the appellant, Mitchell Rogers, in this case. While I'm more than happy to answer questions on all four of the issues that I raised in my briefing, for time purposes, I'm going to be concentrating my arguments to the first two issues. The state chose the charges here. The state chose to proceed on a theory that it could not prove. In the charging documents, the state alleged that there was sexual penetration and under the law, penetration is contact, however slight, that penetrates the labia majora and menorah. Unfortunately, in this case, the state could not sustain that burden and chose not to modify the charges at any time before it went to trial on those charges. The state relies on SS's out-of-court statements because, of course, at trial, SS denied that anything happened, denied that Mitch had ever touched her inappropriately, had ever done anything that made her uncomfortable. So, the state put a lot of eggs in these out-of-court statement basket and in that out-of-court interview, she does not say that there was penetration. She says that Mitch put his penis all around her. She colors in the crotch area, the legs, the belly, the chest, the neck, the face, the feet, the hair, the back, the butt, all of the areas on this anatomical drawing, none of which goes to whether or not there was penetration. And the state, in its response, brings up an excellent case, People v. Gonzalez, where the two alleged victims had an anatomical drawing of a female genitalia. Here, what we had was an outline of what a girl looked like and what a boy looked like without any sort of detail. So, the girls in Gonzalez were able to circle the labia majora and used some sort of pushing in in their testimony. He was pushing in or was pushing in so that there could be penetration. That is exactly what we lack here. And, of course, I understand that in this case, S.S. is significantly younger than I believe the alleged victims in Gonzalez. But either that required a second interview with Detective Thompson or that required the state to sit down with the evidence that it had adduced before trial and realize that it didn't have what it needed for predatory criminal sexual assault and perhaps modified it to aggravated criminal sexual abuse or shored up its evidence. It's not my place to question how the state should have proceeded. All I can say is the state proceeded in one way and did not meet its burden. Counsel, if I may, would you agree that there are cases such as the People v. Janis case that suggest sexual penetration may be reasonably inferred from the evidence, even without specific testimony, that the defendant was inside, if you will, the victim's vagina? Do you agree that there are cases that suggest that that can be inferred from the evidence? Absolutely. And I think the language that you just used, Your Honor, the inside, the vagina, all of those terms would give suggestions of penetration. I can foresee a lot of different cases where we wouldn't have scientific language of, well, he, you know, he separated my labia majora and then put his, you know, that's not what we expect. We don't expect lay witnesses to speak in medically accurate terms. I'm so sorry, Your Honor. What was that? How old was the victim at the time of trial? At the time of trial, she was seven. At the time of her interview, she was only four. And so I completely understand that a four-year-old isn't going to be able to give, as I said, those sort of technical medical terms. But that's why a second interview or even an interview with somebody who was slightly more experienced, I believe this was Detective Thompson's first child interview, and he simply did not elicit the kind of testimony that the state needed to proceed on the charges that it chose to proceed on. Go ahead, Justice Grisham. Didn't the little girl testify that he touched her private with his private? If I'm recalling the evidence correctly, I thought that was elicited from the interview. Not quite that. He touched her with his private all around. And then where did he touch you with his private? The crotch part had already been circled. She kind of traced over that line. And that's when she kind of drew in, again, the face, the back, the legs, the feet. And then when he asked her to speak out loud what part she had touched, she said, I think, neck, chest, hair, feet. So she didn't say that he had touched her private with his private. That's the statement that the state did not have, which might have...I don't think in this case that went far enough to prove penetration. Again, I can see in a different fact pattern how it would. Justice Leonard, I apologize. Were you cut off in a way that I can answer a question for you? Well, I'll make sure that...Justice Grisham, does that address your inquiry? Yes, thank you. Thank you, counsel. My question involves a little bit more focusing then on the testimony of Plummer, who I believe testified that vulvar coitus is a form of sexual penetration that does not involve the penis actually entering the vagina. Would you agree that that evidence was presented and that that is a form of sexual penetration? That is a form of sexual penetration. And what Nurse Plummer was very careful to say on the stand is that she does not know that that is what happened in this case. That is a form of penetration that can cause UTIs, but that does not make an A equals B equals C relationship. And even the state in its response brief makes that mistake, which I think makes it all the more understandable that the jury might have made this mistake. Again, I can't read minds, but the state on page four of its brief says, given the nature of the assault, as if we know for a fact that vulvar coitus is what happened in this case. But when we evaluate this counsel and we look at the light most favorable to the state as a rational trier of fact, whether the elements can be determined, if that has been presented, then when we combine that with the painful urination, urinary tract infections, then even without that specific testimony, isn't that something that a rational trier of fact could infer from that evidence? No, Your Honor. Unfortunately not given... If there had been more, if maybe they had shown SS a picture of vulvar coitus, which was published to the jury and said, is this what happened? And she said, yes, then we would have that last connection. But with the UTIs, what nurse Plummer testified to was that both mom and dad had said that she had a history of UTIs of painful urination. But what we have from the state's evidence is that there was just one instance of something happening in a bedroom with Mitch and SS. So that's not... Did they define history as a long standing condition or simply as the term that was recorded that they provided a history, meaning they gave information? Well, mom and dad were not together at the time, so this would have been separate, but... I understand, but the use of the word history in the context in which it was given, your implication is history meaning long standing or long term. My question is, wasn't it really the term that's normally found in medical records that a person provides a history, meaning it could have been yesterday, but it's part of the history. And I think maybe accepting the evidence in the light most favorable to the state, perhaps I will go along with that definition. I don't know that that's what the record necessarily shows, but if it was one to one, that still does not prove that vulvar coitus is what happened. Children, women, people with vaginas get UTIs. It does not prove sexual penetration, and I think Nurse Plummer was incredibly careful to make sure that she didn't imply that it was a one to one... Isn't it what we call circumstantial evidence? Your Honor, I'm afraid I have to push back on that and call it a flight of fancy, a leap that we are being asked to make, and I think the state went to a great deal of effort. I didn't say that it's dispositive evidence. My question was, isn't that what we call circumstantial evidence? Is it circumstantial evidence when... If the nurse says that these are things that can happen if there is some form of vulval penetration, child provides a history of that, the parent provides a history of that, isn't that what we call circumstantial evidence? It's not dispositive, but it is a relevant factor. It is evidence, and it is relevant in that the nurse provided the medical background for it. I'm not disagreeing that it shouldn't have been admitted under, I believe it's 801, relevant evidence should be admissible. I think that there is enough of that causal link, as Your Honor just pointed out, but I think that... Okay, so to that sense, it is circumstantial evidence, but even if the state presents circumstantial evidence, that doesn't mean that they've met their burden of proof. Absolutely. My question was just, isn't that what we call circumstantial evidence? The answer would be yes. Thank you. Yes, Your Honor. It took me a while to get there, but I'm on your page now. It is circumstantial evidence that is insufficiently linked to what happened to actually constitute proof of penetration. And then finally, of course, we have Swearengin's statement, which is the only time that the word penetration is used during this trial. While I will argue in my second section that this was improperly admitted, at the moment I have to accept the evidence as proper, which means that we are looking at this only as investigatory procedure, not as substantive evidence, because it was never admitted as such. And if it is just to explain why she called the DCFS a hotline, then we still do not have evidence of penetration. We have SSS statements that do not allege penetration. We have Nurse Plummer's theory about something that could cause a UTI, while we know that many, many other things could also cause UTIs, and that there is absolutely no proof. She found no physical evidence that there was any sexual assault. Again, I recognize that there will not always be evidence of sexual assault, but I'm saying that there is nothing to link vulvar coitus to what SSS described. She did not describe vulvar coitus during her interview, except this- Talk about how he was humping her, and she actually acted out that behavior. Absolutely, Your Honor, and I think- Her pants are down, his pants are down, he's on top of her, and he's what she described as humping her. What conclusion does that lead us to? Not on top of her, Your Honor. I don't think that was ever- but his pants are down. I don't know that her pants are down. Again, I think that we're coming at it with a knowledge as adults of what sex is, and so we're thinking it's very easy for us to make that mental leap of, oh my gosh, there was sex. Actually, you're coming at it from that perspective. We're trying to come at it from the perspective of what can we reasonably expect a four-year-old to describe to us, and then at trial, a seven-year-old to describe to us, if they have no other history, knowledge, or information of sexual behavior? I think that- I'm putting it in terms of adult recognition. I'm asking the question in terms of what do we reasonably anticipate a four-year-old or a seven-year-old to tell us? I apologize for misunderstanding, Your Honor. What we can expect a four-year-old to tell us is a great deal of information. If she has a follow-up interview, I think it's important to know the disclosure was about two years or three years, if she was four to seven, before the trial. At any point during that time, they could have asked her to go back to the CAC Center, again, which is a nice house-like environment, very comfortable, toys, cookies even, and have perhaps a more experienced interviewer sit down with her again, or even Detective Thompson again, sit down with her and go through it again. Well, let's talk a little bit more about this. Again, in two to three years, the state had ample time to elicit more evidence if it wanted to proceed to trial on the theory of predatory criminal sexual abuse, or assault, rather, excuse me. It could have decided, you know what? We don't want to subject her to another CAC interview. Let's go with a different charge, a lesser charge that will still carry many years of potential sentencing, but not predatory, not the highest. Or the state could have looked at its evidence and said, if we want to go after this, we're going to have to do another interview and done that. If it required two or three more interviews, I think that's perfectly reasonable in a comfortable setting until the child's... If there was any additional information that SS had to disclose, which again, I'm not saying that there is, I'm just saying that it was the state's responsibility to elicit that evidence and present it at court. Again, the state is the architect of the proceedings. The state chooses its theory and then has to live with the consequences of not having enough to prove that theory. I believe that because the state proceeded on its theory and failed to provide enough evidence, that the proper remedy is for the charge to be... Or it's the conviction to be vacated, unfortunately, perhaps. But in the alternative, if the court would decline to do an outright vacate of the conviction, this court could remand for a new trial where Mitchell-Rogers would face the charge of aggravated criminal sexual abuse, which is a lesser included under Kidabrew. And that would prevent any sort of double jeopardy concerns, given that the state had its opportunity to provide its evidence and failed to do so at the first trial. And I think a particularly strong missing link in its evidence was indeed the Sheila Swearingen testimony, which the state failed to bring to light in time for the 115-10 evidentiary hearing, which was held before trial. At that hearing, the only evidence that the state asked the court to consider was Detective Thompson's testimony about SS's out-of-court statements. It did not present another DCFS worker, Kathleen Harvey. It did not present Sheila Swearingen. And then at trial, even though Sheila Swearingen was a bit careful to just say, SS disclosed information, the state pushed and went a step farther and said, well, what was that information? Well, she disclosed penetration, oral and vaginal. And that is the only substantive evidence that the state then tried to use in closing to prove that there was penetration. And it's unquestionable that the state used it substantively in closing. The state said she disclosed sexual abuse by her mom's boyfriend, Mitch. The disclosures are made about sexual abuse, specifically vaginal penetration. So this was used substantively. This was something that the jury went into the deliberation room and said, look, we have an adult who was able to put this into words, vaginal penetration occurred. Your Honor, there's no consideration per our Supreme Court in People v. Mitchell that this court can post-rationalize the fact that, well, her statements would have been admissible. Our Supreme Court has held that the time for this evidence is before it gets to the jury. The court must rule on it. And if it is deemed admissible, then it can be brought to the jury. Here, the state absolutely skipped that step, made no attempt to bring Sheila Swearingen in. In fact, she was not even listed on the motion in Lemonade asking for a 115-10 hearing. Again, it was the other DCFS worker, Kathleen Harvey. The state then alludes to Ms. Harvey's testimony Your Honor, I believe you're now out of time. You will have time in rebuttal. Thank you, Your Honor. Mr. Williams, your argument, please. Thank you, Your Honor. May it please the court. Counsel, my name is James Ryan Williams and it's my privilege to represent the state before this honorable court. With respect to defendant's first argument that the state failed to prove sexual penetration, the evidence showed that there was indeed contact between the defendant's penis and the victim's vagina. During the victim's CAC interview, she explained, quote, defendant put his private part all around her and did so immediately before circling the genital area on the diagram of the female. And viewed in the evidence light, in the evidence most, excuse me, and when you view this evidence in the light most to the state, this could have allowed a rational trier of fact to find that there was indeed contact or intrusion, however slight. Moreover, that penetration occurred was corroborated by the victim's other statements such as, as Your Honor pointed out, using the exact words that the defendant was humping her while making a humping-type motion and as well as huffing noises. The victim also suffered from painful urination, bladder infections, and bedwetting which were all consistent with sexual penetration. There's also the fact that the victim was randomly witnessed by a DCF caseworker doing pelvic thrusts and sucking on her shirt completely out of nowhere when the DCFS caseworker was having a conversation with the victim's father about defendant. And finally, I'll point out that the jury here did have the option to convict on the lesser included offense of aggravated criminal sexual abuse, but was obviously persuaded that the defendant had indeed penetrated the victim's vagina. Now, with respect to the DCFS caseworkers passing reference to the disclosure itself, I'll first note that these criminal proceedings here were initiated after the victim made a disclosure to the DCFS caseworker. This occurred during a routine visit in the midst of a termination case against the victim's mother. Again, the victim was seen making these humping motions and sucking on her shirt, so the DCFS caseworker decided to speak to her privately whereupon she the abuse. Now, at trial, in order to explain how these criminal proceedings were initiated, the state simply asked whether there was a disclosure of abuse and the general nature of it. If I may, you rely significantly on the people versus bowling case to discuss this issue of the course of an official investigation, but this was a DCFS worker, not a police officer, correct? That is true, your honor. And so does that not distinguish people versus bowling for us, just on that basis? That's arguably distinguishable. I think the testimony otherwise could have been admitted for its effect on the listener. But it does appear here, counsel, that, I mean, she testified specifically to sexual and oral penetration. It seems this was substantive evidence and that it was not included in the motion for the 115-10 hearing. Well, to that end, your honor, I would point out that, of course, there was no objection to this. And, of course, you know, had there been an objection to this, that could have occasioned, I know the 115-10 proceedings are preferred to be conducted in advance of trial, but it's not impermissible to conduct them during trial. But it wasn't conducted at all, correct? That is correct, your honor. But, I mean, given the time, content, and circumstances of this disclosure, I think that the court would have found that there were adequate safeguards here. And I will point out, with respect to not objecting on this point, you know, my review of the police reports suggests that this DCFS caseworker, if there was a 115-10 hearing, could have provided substantially more substantive details of the disclosure. And instead, all we really have are the fact that there was a disclosure of sexual abuse. So, ultimately, it's the state's position that this was not a plain error and that not a clear and obvious error. And that, in any event, there's not a reasonable likelihood that the defendant would have been acquitted if only the DCFS worker had not stated that there was a disclosure. And unless there are any other questions, thank you for your time, your honors. Ms. Lucy, you may proceed with your rebuttal argument. Your honor, very briefly, as the state said that the evidence that S.S. said during her interview showed that there was contact and penetration. Your honor, I believe that the evidence shows that there was some sort of contact between Mitchell's penis and perhaps even the crotch area of S.S. taken in the light most favorable to the prosecution. But that is not penetration. Penetration is the insertion, no matter how brief or no matter how slight, into the labia minora or majora of the alleged victim. That is the state's theory that it failed to prove. It could have gone with different charges that only required contact. And then perhaps not all be sitting here right now, but the state chose penetration, and it did not prove that. The state chose that there was humping and huffing. But your honor, again, where? That was not stated. That was not elicited. Detective Thompson did not ask her about it. They did not bring her back for a second interview. This is perhaps a minor point, but she actually did not suffer bedwetting. Nurse Plummer said she was going to check her notes to see if she suffered from incontinence, and then the conversation went elsewhere. So we do have a history of UTIs, whether that means singular or plural. But again, that can come from improper wiping or a myriad of other explanations. Counselor, are you arguing because it wasn't, I guess, direct evidence of penetration that the state has failed to carry their burden? Is that essentially what you're saying? Correct, your honor. On the issue of penetration, the state has failed to carry its burden. For argument two, the state... Well, your response is a little different than Justice Grishow's question. Her question was, is your argument that without direct evidence of penetration, the state cannot meet their burden? And if I'm misstating, Justice, if I'm misstating your question, that's the way I understood it. That is correct. That's different than the answer. And I apologize for that. I understand the distinction. Now, the state does not always need to provide direct evidence. In this case, not only did the state not provide direct evidence, it did not provide sufficient circumstantial evidence to support meet the burden that it had given itself. That is to say, while it presented a great deal of evidence on what vulvar coitus is, it could not link that to what actually happened in this case. We would have needed SS to say something like... I couldn't even begin to tell you, Your Honor. I would hesitate. But again, a second interview, a more experienced interviewer who could have elicited this information, we needed a link that the state never provided. Or as the state points out, it perhaps had Kathleen Harvey, whose testimony is listed in the police report. The state didn't call her as a witness at the 1-10-15 hearing. Excuse me, I reversed those numbers. Didn't call her, never elicited that testimony. Didn't call her as a witness at trial. I don't know what evidence the state had. Maybe it had a lot of evidence. So the information that Mr. Williams talked to us about, all the humping, the drawing, all that, you don't think that's sufficient circumstantial evidence to carry their burden? Of contact, I think the state could have made its case. I do have to admit that, Your Honor. Of penetration, absolutely not, Your Honor. I believe that the state had further to go and should have either changed its theory of the case and charged with the lesser included, or it should have gotten more evidence, included the DCFS worker at its 1-15-10 hearing. So it could have used that evidence substantively very briefly in my final minute, Your Honor, just because my esteemed counsel brought it up. The fact that there was no objection to the 1-15-10 testimony not being included, first of all, it's not counsel's job to necessarily object to it. The rule is clear. It has to be done before trial. No court can review the evidence without a 1-15-10 hearing and find that its lack of presentation before trial was excused. But also, I believe that goes to the fourth argument in my briefing, that counsel was asleep at the wheel. And while my time is rapidly concluding, I would simply ask this court to vacate his conviction for predatory criminal sexual assault. Thank you, Your Honor. The court will take the matter under advisement and the court stands in recess.